UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEISHA L. HAMMETT,

        Plaintiff,               Case No. 2:16-cv-12304
                                  District Judge Nancy G. Edmunds
v.                                 Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO DEEM MOOT PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DE 11), DENY PLAINTIFF'S
_CORRECTED_ MOTION FOR SUMMARY JUDGMENT (DE 12), GRANT
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 14) and
AFFIRM THE COMMISSIONER'S DECISION**

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DEEM MOOT** Plaintiff's motion for summary

judgment, **DENY** Plaintiff's _corrected_ motion for summary judgment, **GRANT**

Defendant's motion for summary judgment, and **AFFIRM** the Commissioner's

decision.

**II.**     **REPORT**

       Plaintiff, Keisha L. Hammett, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for disability insurance (DI) and

1

supplemental security income (SSI) benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment, Plaintiff's *corrected* motion for summary judgment, the Commissioner's cross motion for summary judgment, and the administrative record (DE 7).

### A.    Background

Plaintiff filed her applications for DI and SSI benefits on July 8, 2014, alleging that she has been disabled since July 1, 2013, less than two weeks shy of her 41st birthday. Plaintiff alleges disability based upon mental disorders (post-traumatic stress, bipolar and intermittent explosive disorders), as well as kidney problems. Her applications were denied in September 2014. She sought a *de novo* hearing before an Administrative Law Judge ("ALJ"), which was conducted on January 8, 2016. On February 24, 2016, ALJ Sloss determined that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff requested review of the hearing decision. On June 10, 2016, the Appeals Council denied Plaintiff's request for review. Thus, the ALJ's decision became the Commissioner's final decision. Plaintiff then timely commenced the instant action on June 22, 2016. Her testimony and medical records will be discussed as necessary in the analysis which appears below, in lieu of summarizing them here.

## B.    The Administrative Decision[1]

At **Step 1** of the ALJ's decision denying benefits, he determined that Plaintiff has not engaged in substantial gainful activity since July 1, 2013, the alleged onset date.  (R. at 21.)  At **Step 2**, the ALJ determined that Plaintiff has the following severe impairments:  degenerative disc disease (DDD), bipolar disorder, intermittent explosive disorder (IED), and substance abuse disorder.  (R. at 21-22.)  At **Step 3**, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 22-24.)  Prior to **Step 4**, the ALJ determined that Plaintiff had the RFC to perform the exertional limitations of light work, with some additional mental health limitations.  (R. at 25-34.)  At **Step 4**, the ALJ determined that Plaintiff is capable of performing her past relevant work as a house cleaner/housekeeper, explaining that this work does not require the performance of work-related activities precluded by her RFC.  (R. at 34-35.)  As such, there was no need to proceed to **Step 5**.

## C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### D. Analysis[2]

#### 1. The opinion evidence as to Plaintiff's *mental health restrictions*[3]

[2] Plaintiff's motion mentions that several claimed mental health limitations were not listed as severe impairments; however, the Court does not construe this as a Step 2 argument, but, instead, as limited to the ALJ's treatment of her mental impairments *within the Step 4 RFC determination*. This construction is confirmed by Plaintiff's statement that "[o]nce the [ALJ] finds that the Plaintiff has a severe impairment, he must weigh all of the Plaintiff's impairments, both severe and non-severe, when determining the Plaintiff's [RFC][.]" (*Compare* DE 12 at 6, DE 14 at 6-8.) *See Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

[3] Plaintiff points out that there was no physical consultative examination in this case and that there was no opinion from a non-examining medical consultant as to "her physical impairments." (DE 12 at 5.) Even so, Plaintiff's motion does not otherwise challenge the RFC's exertional limitation of "light work." Also, while she mentions the severe impairment of DDD, she does not otherwise challenge the ALJ's statement that her DDD "has been accommodated for by limiting the claimant to light exertional work." (R. at 34.) Thus, this report does not opine on

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. §§ 404.1527(b), 416.927(b).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

### a.    Evaluating opinion evidence as to mental health limitations

The ALJ found that Plaintiff's psychological symptoms limit her to "simple, routine tasks, in work that has only occasional changes in the work setting, and that involves only occasional interaction with the general public."  (R. at 25.)  Moreover, at Step 2 the ALJ characterized Plaintiff's bipolar disorder, IED, and substance abuse disorder as severe impairments (R. at 21), at Step 3 the ALJ concluded that Plaintiff has moderate difficulties in social functioning and moderate difficulties with regard to concentration, persistence, or pace (CPP) (R. at 23), and at the conclusion of the Step 4 RFC discussion, the ALJ accommodated these findings by limiting Plaintiff to:

---

Plaintiff's alternative request to remand for, among other things, "physical consult[at]ive evaluations."  (DE 12 at 11.)

. . . work that has only occasional changes in the work setting and that involves only occasional interaction with the general public.

. . . simple, routine tasks, in work that has only occasional changes in the work setting.

(R. at 34.)

Plaintiff argues that the ALJ erred in his consideration of the opinion evidence as it relates to Plaintiff's mental health impairments, such as those determined to be severe at Step 2, as well as PTSD, hallucinations, depression and anxiety. (DE 12 at 5-6.) As illustrated below, the ALJ properly considered the opinion evidence:

### i. Consideration of opinion evidence when treating physician's opinion is discounted

If the ALJ does not afford controlling weight to a treating physician's opinion, as is the case here, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

[A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2), now 20 C.F.R. 404.1527(c)(2)). However, there is no *per se* rule that requires a written

articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F.App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F.App'x 802, 804-805 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2), now 20 C.F.R. § 404.1527(c)(2)).

### ii. Anjana Bhrany, M.D. (treating psychiatrist)

On May 13, 2014, Plaintiff underwent a psychiatric evaluation by Anjana Bhrany, M.D. of Genesee Health System. (R. at 411-417, 501-507, 776-782.) Dr. Bhrany diagnosed PTSD, IED, cocaine dependence, and alcohol abuse, and assessed Plaintiff's G.A.F. at 50.[4] Although the ALJ's decision does not reference Dr. Bhrany by name, the ALJ does make multiple references to records from

---

[4] The diagnoses of cocaine dependence and alcohol abuse were listed as effective March 31, 2011. (*See also* R. at 386, 570, 623, 743.) "GAF 41–50 indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006) (quoting *DSM–IV–TR* at 34). However, as the Sixth Circuit noted in *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411 (6th Cir. 2006), "the Commissioner has declined to endorse the [Global Assessment Functioning] score for use in the Social Security and [Supplemental Security Income] disability programs, and has indicated that [Global Assessment Functioning] scores have no direct correlation to the severity requirements of the mental disorders listings. Accordingly, we have affirmed denials of disability benefits where applicants had Global Assessment Functioning scores of 50 or lower." *DeBoard*, 211 F.App'x at 415 (listing cases).

Genesee Health System, including the assignment of "little weight" to Dr. Bhrany's May 2014 G.A.F. assessment. (R. at 28, 416, 506, 781.)

Preliminarily, it is unclear whether Plaintiff is challenging the ALJ's treatment of Dr. Bhrany's May 2014 opinion. Plaintiff points to Dr. Bhrany's "continued" assessments of a 50 G.A.F. Plaintiff then contends that her treating sources provide a "more restrictive" RFC than found by the ALJ and that their opinions "are consistent with" medical evidence of record and Plaintiff's testimony. (DE 12 at 8.) If this is the extent of Plaintiff's argument as to the ALJ's treatment of Dr. Bhrany's opinion, it may well have been waived. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("In the absence of any such focused challenge, we decline to broadly scrutinize any and all treating physician opinions in the record to ensure that they are properly accounted for in the ALJ's decision.").

However, even if Plaintiff intended to challenge the ALJ's treatment of Dr. Bhrany's May 2014 opinion, the ALJ offered a cohesive explanation for discounting this particular G.A.F. assessment:

> The GAF assessment of 50 is *not proportionate* with the recitation of the claimant's activities and social functioning, and is given little weight. It is also *inconsistent* with the mental status examination that day, which revealed, "She is well dressed and groomed. She feels she is a victim of the society. System has done her very wrong, becomes very easily hostile. She is having nightmares, flashbacks of her sexual assault ... Her thoughts are otherwise coherent, relevant and spontaneous and she answers appropriately ... She is oriented [times

three].  Memory is intact. Overall intellectual functioning is within normal range.  Insight and judgment:  Superficial to limited. She still feels very angry about her sexual assault."  (2F/36 [R. at 414]; 4F/48 [R. at 504]; 12F/4 [R. at 779])  This examination is *neither reflective of nor indicative of* an individual suffering serious symptoms or a serious impairment.

(R. at 28 (emphases added).)  Not only did the ALJ earlier explain that "GAF ratings are opinion evidence and need supporting evidence to give them weight[,]" (R. at 27), but also the above-quoted paragraph makes clear that the ALJ considered the supportability and/or consistency factors. 20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4).  Moreover, demonstrating a particularly exacting and careful scrutiny, the ALJ also noted that another G.A.F. score of 52 "is partially proportionate with the recitation of the claimant's activities and social functioning, and is given partial weight . . . ."  (R. at 31.)  Thus, to the extent, if at all, Plaintiff contends that the ALJ did not consider Dr. Bhrany's opinion in accordance with 20 C.F.R. §§ 404.1527, 416.927, I disagree.  As required by the pertinent ruling, the ALJ's reasons for discounting Dr. Bhrany's opinion are "clear" to me as "the subsequent reviewer."  *See* SSR 96-2P (S.S.A. July 2, 1996) ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

### iii. Joseph Laird, M.S., L.L.P.C. (treating social worker)

Plaintiff treated with social worker Laird during 2014 and 2015. (R. at 458-477, 554-625, 703-764; *see also* R. at 211-212.) On December 28, 2015, Laird completed an SSA medical source statement. As to most areas, Laird rated Plaintiff's ability to understand, remember, and carry out instructions as "moderate," although he rated Plaintiff's ability to understand and remember complex instructions as "marked." Also, Laird rated Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public as moderately restricted and Plaintiff's ability to respond appropriately to usual work situations and to changes in a routine work setting as markedly restricted. (R. at 784-786.) As to these ratings, Laird supported his assessment as follows:

> Keisha has a diagnosis of [PTSD] . . . & [IED] . . . [.]" PTSD causes her distress / impairment in social interactions, capacity to work or other important areas of function. IEP – several discrete episodes of failure to resist aggressive impulses that result in serious assault[.]

(R. at 784.) While the ALJ correctly acknowledged that Laird was not an "acceptable medical source," the ALJ evaluated Laird's opinion as an "other source" under 20 C.F.R. §§ 404.1513(d), 416.913(d). In so doing, the ALJ explained that Laird's opinion was:

> . . . given *partial weight to the extent it is consistent with* the above-stated [RFC] and conclusion that the claimant suffers moderate difficulties in maintaining social functioning and moderate difficulties in maintaining [CPP].

(R. at 33 (emphasis added).)

Plaintiff contends this statement is "without any analysis," and proceeds to identify Laird *as a treating source* who provides a more restrictive RFC than the ALJ and whose opinion is consistent with medical evidence of record and Plaintiff's testimony. (DE 12 at 7-8.) At the outset, I agree with the Commissioner that Plaintiff has not made a "developed argument as to how the ALJ incorrectly evaluated Mr. Laird's opinion." (DE 14 at 18.) *See Roby v. Comm'r of Soc. Sec.*, 48 F. App'x 532, 536 (6th Cir. 2002) ("Issues that are adverted to in a perfunctory manner without some effort at developed argumentation are generally deemed waived.") (citing *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002)).

Moreover, Laird's only "marked" ratings were in Plaintiff's ability to "understand and remember complex instructions" and to "respond appropriately to usual work situations and to changes in a routine work setting." (R. at 784-785.) As previously noted, the ALJ appears to have accommodated these deficiencies by limiting Plaintiff to "simple, routine tasks," with "only occasional changes in the work setting," and "only occasional interaction with the general public." (R. at 25.) At least two of the ALJ's RFC non-exertional limitations appearing to correlate with those areas in which Laird rated Plaintiff as having "marked"

limitations, and Plaintiff not having provided a developed argument otherwise, the assignment of "partial weight" to this opinion should be affirmed.

### iii. Jackie Duncan, N.P. (treating nurse practitioner)

Plaintiff treated with nurse practitioner Duncan during 2014-2015. (R. at 385-393, 470-483, 540-624, 712-768.) On January 11, 2016, Duncan completed an SSA medical source statement. She rated Plaintiff as moderately restricted in her ability to understand, remember and carry out simple instructions, and markedly limited in several other categories. In addition, Duncan offered the following explanation:

> Keisha has a history of depression. Keisha has difficulty sleeping, concentrat[ing] and display[s] paran[oid] thoughts. Keisha has daily auditory hallucinations due to her trauma history. Keisha has trust issues with others. Keisha is diagnosed with [PTSD][;] therefore[,] she experiences anger and depressive thoughts.

(R. at 788-790.)

While the ALJ acknowledged that Duncan was also not an "acceptable medical source," he appropriately evaluated Duncan's opinion as an "other source" under 20 C.F.R. §§ 404.1513(d), 416.913(d). In assigning it "little weight," the ALJ explained that it was "inconsistent with the . . . medical records of evidence and mental status examinations[,]" and made several, specific citations to the record in support thereof, such as:

- A July 7, 2014 medication review, signed by Duncan, with a mental status reflecting "[Alert and oriented times 3.] Grooming and hygiene is good. Dressed appropriately for weather. Polite cooperative. No involuntary movements. Mood depressed. Affect anxious. Thoughts coherent and logical. No psychosis. Speech fluent normal prosody. Denies SI [suicidal ideation] or HI [homicidal ideation]." (R. at 384, 469.) Also, Plaintiff reported "medication helping" and stated: "If it was not for the medication[,] I would proba[b]ly be in jail." Plaintiff also reported having had "a couple of night mares" but also noticed "a decrease in her voices, agitation, and anxiety overall." (R. at 382, 467.)

- At a September 4, 2014 medication review, signed by Duncan, Plaintiff was "[f]airly stable on meds[,]" although she reported being "[a] little depressed last week . . . [.]" (R. at 619.) Also, Plaintiff "states meds [are] helping to stabilize h[er] mood, periodic episodes of mild depression secondary to external stressors[.]" (R. at 622.)

- May 2015 notes, signed by Duncan, wherein medication impact was "favorable" and side effects were "[d]enie[d]/none noted[.]" (R. at 542.) Also, the description of mental status included, "Pleasant and cooperative. No[rm]al gait, no involuntary motor movements. Good eye contact. Mood stable. Affect appropriate. Thoughts linear. No psychosis. No lethality. Eating and sleeping fairly well. (R. at 539.)

- August 31, 2015 notes by Huda M. Elhwairis, M.D., at which Plaintiff reported her same-month hospital admission for "being homicidal and suicidal" but also reported feeling "ok now" and wanted "pain med refill[.]" At the same visit, Dr. Elhwairis described Plaintiff's depression as "currently stable." (R. at 690-692.)

- On September 25, 2015, also in notes signed by Duncan, Plaintiff's mental status included, "Pleasant and cooperative. No[rm]al gait, no involuntary motor movements. Good eye contact. Mood '[kind] of lazy' rate mood as '7' (1=S/I, 10

> =best she has every felt).  Affect appropriate.  Thoughts linear.
> No psychosis.  No lethality.  Eating and sleeping fairly well."
> (R. at 711).

(R. at 33-34.)

In Plaintiff's words, Duncan's opinion seems to "preclude all work."  (DE 12 at 7.)  As a treating source, Plaintiff points out that Duncan would have "longitudinal" knowledge.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  That may well be true.  Still, Plaintiff's other arguments on this issue are unavailing.  First, Plaintiff claims that the ALJ did not cite "significant medical opinions that *disagree* with [N.P.] Duncan[.]"  (DE 12 at 8 (emphasis added).)  However, the ALJ's foregoing citations substantiate that the inconsistency to which he refers is Plaintiff not being as "markedly" limited as Duncan contends, in other words *internal inconsistency*.

Second, Plaintiff alleges that the ALJ spent "little time discussing" that Plaintiff's diagnoses "did not change significantly," that she "was hospitalized twice during the timeframe[,]" and that Dr. Bhrany "continued to assess her with GAF scores at 50 . . . ."  (DE 12 at 8.)  However, the ALJ expressly addressed the consistency of Plaintiff's diagnoses by citing Dr. Bhrany's May 2014, Duncan's December 2014 and September 2015 notes and stating the subsequent diagnoses were "again" or "remained" PTSD, IED, cocaine dependence and alcohol abuse.  (*See* R. at 28, 29, 31, 416, 588, 713).  Also, as discussed elsewhere in this report,

the ALJ appropriately addressed Plaintiff's two hospitalizations and appropriately discounted Dr. Bhrany's May 2014 G.A.F. assessment of 50.

Third, Plaintiff alleges that the ALJ spent "little time discussing" the fact that she "continued to have mood swings[.]" (DE 12 at 8.) True, such complaints seem to be noted on several occasions during 2014. (*See* R. at 475, 510, 601, 608.) However, the foregoing citations illustrate the ALJ's repeated consideration of Plaintiff's varying moods (*e.g.* R. at 33-34), and the ALJ "is not required to analyze the relevance of each piece of evidence individually." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011). Nor is the ALJ "'required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.'" *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467-68 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). Perhaps more importantly, Plaintiff does not show how the absence of discussion of Plaintiff's mood swings is not accommodated by the non-exertional, mental health limitations contained within the RFC.

In the end, even if Duncan provided for a "more restrictive" RFC than did the ALJ (DE 12 at 8), the ALJ having appropriately discounted Duncan's opinion on the supportability and/or consistency factors, *see* 20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4), and Plaintiff having failed to show how her

non-exertional limitations have not been addressed by the RFC's mental health limitations, the assignment of "little weight" here should be affirmed.

### v. Ashok Kaul, M.D. (state agency consultant)

On September 19, 2014, state agency consultant Ashok Kaul, M.D. conducted a mental RFC assessment. Dr. Kaul opined that Plaintiff was "moderately limited" in her:

**(a)** ability to understand and remember detailed instructions, although she was able to understand and remember simple instructions;

**(b)** abilities to carry out detailed instructions and to maintain attention and concentration for extended periods, although she retained sufficient attention and concentration to be able to complete simple tasks;

**(c)** abilities to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors (further explaining that the work ought to require no dealings with the public and only superficial contact with supervisors); and

**(d)** ability to respond appropriately to changes in the work setting (but can adjust to simple changes).

(R. at 69-71, 80-82.)

At Step 3, the ALJ assigned Dr. Kaul's opinion "great weight" in assessing the Paragraph B criteria, explaining that the opinion was "consistent with the evidence of record as a whole." (R. at 23-24.) However, within the Step 4 RFC determination, the ALJ assigned "partial weight" to Dr. Kaul's concluding mental

RFC description – namely that "Claimant is capable of low-stress simple, routine, 1-2 step unskilled tasks with the interpersonal accommodations noted above[,]" (R. at 71, 82) – to the extent it is consistent with "the above-stated residual functional capacity" and "conclusion that the claimant suffers moderate difficulties in maintaining social functioning and moderate difficulties in maintaining [CPP]." (R. at 33.)

Plaintiff takes issue with what he considers to be the ALJ's assignment of weight to Dr. Kaul's opinion based on its *consistency with the RFC* rather than its consistency with Plaintiff's symptoms or record medical evidence. In particular, Plaintiff claims that the ALJ's mental RFC omits Dr. Kaul's concerns about: carrying out detailed instructions; maintaining CPP for extended periods of time; no dealings with the public; only superficial contact with supervisors; only simple changes in the work setting; low-stress tasks; and 1-2 step unskilled tasks. (DE 12 at 6-7.) Moreover, Plaintiff claims it is "unclear" on what medical evidence the ALJ relied to impose a *less restrictive* mental RFC than that suggested by Dr. Kaul. (*See* DE 12 at 7; *see also* DE 12 at 9.)

However, the ALJ's treatment of Dr. Kaul's opinion should be affirmed. First, the ALJ addressed many of these areas in determining that Plaintiff was limited to "simple, routine tasks," with "only occasional changes in the work setting," and "only occasional interaction with the general public." (R. at 25.)

Second, while the Court acknowledges that there are differences between Dr. Kaul's and the ALJ's mental RFC assessments,[5] Plaintiff has failed to show how any of the aforementioned "differences" or "omissions" from the mental RFC entitle him to remand.  The burden at Steps 1 through 4 remains with Plaintiff. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  In other words, Plaintiff's list of differences and/or omissions does not show how the mental RFC *as assessed* is unsupported by substantial evidence, especially, as here, where Plaintiff has failed to show error in the ALJ's evaluation of Bhrany, Duncan and Laird.  Even if the RFC as assessed does not exactly match Dr. Kaul's mental RFC assessment, and even if the ALJ's reasons for omitting certain portions of it are unclear, it is not this Court's job to comb the record for citations in support of *retaining* these conditions, particularly where Plaintiff contends that the record medical evidence "supports an even more restrictive [RFC] than that suggested by Dr. Kaul . . . [,]" albeit without specifically identifying it.  (DE 12 at 7.)

Finally, even if the ALJ did not designate Dr. Kaul as a state agency consultant, I note that "Federal or State agency medical or psychological

---

[5] For example, Dr. Kaul assessed "moderate" limitations in Plaintiff's ability to "interact appropriately with the general public" and "respond appropriately to changes in the work setting," while the ALJ's Step 4 RFC mental health limitations are "occasional" in these areas.  (*Compare* R. at 25, 70-71, 81-82.)

consultants are highly qualified and experts in Social Security disability

evaluation." 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). In the end, the ALJ

explained that he was assigning "partial weight" to Dr. Kaul's conclusion to the

extent it was *consistent with* the RFC and conclusions about certain Paragraph B

criteria. (R. at 33.) Therefore, in discounting this opinion, the ALJ took the

consistency factor under consideration. 20 C.F.R. §§ 404.1527(c)(4),

416.927(c)(4). Plaintiff not having met her burden to overcome this finding, it

should be affirmed.[6]

### vi. Plaintiff's request for a consultative examination and Summary

Two final notes are in order here. First, if Plaintiff intended to bolster the

opinions of her treating sources (Bhrany, Duncan and Laird) by pointing to

medical records that *agree with* or are *consistent with* them, her lengthy string

citation fails to accomplish the task. (DE 12 at 8.)[7] Second, to the extent Plaintiff

observes that no mental health consultative examination was conducted or seeks

remand for a psychiatric evaluation (*see* DE 12 at 5, 11), she has failed to argue,

---

[6] I agree, however, with the criticism that ALJs should not seek to justify the discounting of an opinion by pointing to their own RFC, and the Commissioner is well-advised to avoid this oft-utilized verbiage in the future; nevertheless, Plaintiff still has not fulfilled her burden to establish a contrary RFC.

[7] Moreover, the accuracy of this string citation is called into question, as the administrative record in this case concludes at R. 790, and the string citation at issue contains multiple citations exceeding that page number. (DE 12 at 8.)

much less demonstrate, that one was warranted under the appropriate regulations. *See*, *e.g.*, 20 C.F.R. §§ 220.50-220.64.  Here, the ALJ having appropriately addressed the opinions of Dr. Bhrany, Laird, Duncan and Dr. Kaul, and Plaintiff having failed to show otherwise, the ALJ's treatment of the opinion evidence as to the non-exertional, mental health limitations should be affirmed.

## 2.  The evidence post-dating Dr. Kaul's opinion

At Step 3, in concluding that Plaintiff "has experienced one to two episodes of decompensation, each of extended duration[,]" the ALJ referred to two mental health related hospitalizations:  April 29, 2014 – May 7, 2014 (R. at 313-328) and August 17, 2015 – August 22, 2015 (R. at 632-641).  (R. at 23-24; *see also* R. at 419.)  Then, the ALJ assigned "great weight" to Dr. Kaul's September 2014 opinion that Plaintiff has experienced "one to two" repeated episodes of decompensation, each of extended duration (R. at 67, 78), on the basis that it was "consistent with the evidence of record as a whole."  (R. at 24.)

Plaintiff takes issue with the ALJ's reliance upon Dr. Kaul's opinion on the basis that he "did not review exhibits 6F through 14F" and was, therefore, "not aware of the Plaintiff's psychiatric hospitalization in August of 2015," which, Plaintiff contends, was another "repeated episode of decompensation[.]"  (*See* DE 12 at 8-9.)  Stated otherwise, Plaintiff seems to be arguing that, had Dr. Kaul been

informed by the August 2015 hospitalization, he may have concluded that Plaintiff satisfied Paragraph B or Paragraph C's criteria at Step 3.

Initially, the fact that Dr. Kaul's opinion was based on an "incomplete record," by itself, is not fatal. As the Sixth Circuit has explained:

> The Court's holding in *Blakley* [*v. Commissioner of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009)] . . . require[es] only that before an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give "*some indication*" that he "*at least considered*" that *the source did not review the entire record*. In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny.

*Kepke v. Commissioner of Social Sec.*, 636 F.App'x 625, 632 (6th Cir. 2016) (emphasis added) (internal citation omitted). Thus, what the Sixth Circuit requires is that the ALJ acknowledge his awareness that *the state agency record reviewer* did *not* review the entire record, not merely that the *ALJ himself did* conduct a full review.

The Court should conclude that ALJ Sloss acknowledged his awareness that Dr. Kaul did not review the entire record. The ALJ noted on several occasions through his decision that Dr. Kaul's opinion was issued in September 2014. (R. at 23-24, 33.) Likewise, in at least two instances, the ALJ acknowledged by date-range the August 17, 2015 through August 22, 2015 hospitalization; in so doing, he assigned "partial weight" to the August 2015 G.A.F. assessment of 52. (R. at 24, 30-31, 637.) By expressly noting these dates and having assigned "great weight"

or "partial weight" to Dr. Kaul's September 2014 opinion at Step 3 and within the Step 4 RFC determination, the ALJ gave "some indication" that he knew and "at least considered" that Dr. Kaul did not review the entire record. (R. at 23-24, 33.) It is without question that the ALJ knew that records post-dating Dr. Kaul's opinion could not have been reviewed by him before they were even in existence, and the ALJ's date references make clear that he was aware of this chronology. *See, e.g., Markland v. Comm'r of Soc. Sec.*, No. 2:15-CV-11578, 2016 WL 8116885, at *3 (E.D. Mich. Sept. 22, 2016) (by noting effective dates of non-examining, consulting medical opinion review, as well as the date of an examining (not treating) source, "the ALJ gave some indication that she considered that the consulting physicians based their review on the evidence of record in 2012, without the benefit of Dr. Garver's additional memorandum written in 2013.").

I further note that the Social Security Ruling (SSR) which comments upon "consideration of administrative findings of fact by state agency medical and psychological consultants" provides, in part:

> . . . the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are *supported by evidence in the case record*, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The

adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

SSR 96-6P (S.S.A. July 2, 1996) (emphasis added). As the Sixth Circuit has explained, "[t]here is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'" *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (citing SSR 96-6P). Thus, any argument that the ALJ erred by relying upon the September 19, 2014 opinion of Dr. Kaul, *solely* because he did not have access to certain, later records – such as those concerning the August 2015 hospitalization - would be unavailing.[8] As it relates to Exs. 6F through 14F, the ALJ expressly considered all but Exs. 6F and 8F, neither of which appears related to mental health impairments, instead referring to "right retrograde pyelogram" surgery, cough, and retention of urine. (R. at 531-537, 627-631.)

---

[8] Of the exhibits to which Plaintiff broadly refers as not having been reviewed by Dr. Kaul (Exs. 6F-14F), it appears that Exs. 7F and 12F contain records *pre-dating* Dr. Kaul's September 2014 opinion. (*See*, *e*.*g*., R. at 776-782, 615-618,619-624, 625). The "record review" portion of Plaintiff's argument only makes specific reference to the August 2015 hospitalization records and the effect "*subsequent* medical" records may have had on Dr. Kaul's opinions. (DE 12 at 8-9 (emphasis added).) Therefore, the Court does not construe Plaintiff's argument as concerning documents in Exs. 7F and 12F that *pre-date* September 19, 2014.

Finally, as the ALJ explained, "[r]epeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, *each lasting for at least 2 weeks*."  (R. at 23 (emphasis added).) Thus, even if the Plaintiff's two hospitalizations each constituted an "episode of decompensation," neither the April to May 2014 nor the August 2015 hospitalizations lasted two weeks, as required to qualify for a mental health listing. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(C)(4) (effective until Jan. 17, 2017).

### 3. Plaintiff's credibility

#### a. Framework for the ALJ's evaluation

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor."  *Infantado,* 263 F. App'x at 475; *see also Beavers v. Sec'y of Health, Ed., and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) ("The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.").  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers*, 486 F.3d at 247.  It is for this reason that the ALJ's credibility findings have at times been characterized as

"unchallengeable."  *Payne v. Comm'r Soc. Sec*., 402 F. App'x 109, 113-114 (6th Cir. 2010); *see also Heston v. Comm'r of Soc. Sec*., 245 F.3d 528, 536 (6th Cir. 2001) ("A circuit court . . . may not review a determination of credibility. It is for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony.") (alteration omitted). Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."  *Walters v. Comm'r Soc. Sec*., 127 F.3d 525, 531 (6th Cir. 1997).

When assessing an individual's credibility, "the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged."  *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011).  The ALJ made such a determination here, concluding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." (R. at 31.)   Upon making that finding, the ALJ must next "consider the entire case record" to "evaluate the intensity, persistence, and functional limitations of the symptoms considering objective medical evidence."   20 C.F.R. § 404.1529(c)(1-3).  A non-exhaustive list of relevant factors to be considered by the ALJ include: 1) the claimant's daily activities; 2) location, duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness,

and side effects of medication; 5) treatment, other than medication; 6) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and 7) other factors concerning functional limitations and restrictions. *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. § 404.1529(c)(1-3). The ALJ must "provide a sufficiently specific explanation for his [or her] credibility determination so that it is clear to the individual and any subsequent reviewers the weight given to the individual's statements and the reasons for that weight." *Malcolm v. Comm'r of Soc. Sec.*, 2015 WL 1439711, at *7 (E.D. Mich. Mar. 27, 2015) (citing *Soc. Sec. Rul.* 96-7p, 1996 WL 374186, at *1 (July 2, 1997)).

### b.      Productivity and absenteeism

Plaintiff has mis-framed her argument challenging the propriety of the hypotheticals posed by the ALJ to the VE. She takes the position that the hypothetical questions posed to the VE were "improper," as they "did not accurately describe the Plaintiff's [RFC]." (DE 12 at 10.) However, the Court should agree with the Commissioner that this argument is mis-framed, as it "confuses the true issue presented." (DE 14 at 26.) Here, where the hypothetical to the VE is identical to the ALJ's Step 4 RFC determination (see R. at 25, 60), the more accurately stated challenge is whether substantial evidence supports the mental health RFC limitations that are the subject of this appeal. Whether

intentional or not, Plaintiff's "Step Five argument is a veiled attack on the ALJ's underlying RFC finding." *Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("the ALJ's hypothetical in this case was identical to his RFC assessment.") By mis-framing the argument in this fashion, Plaintiff seemingly attempts to shift the burden from herself to the Commissioner, but recognizing that this is more accurately framed as a Step 4 issue, the burden remains with the Plaintiff. *Walters*, 127 F.3d at 529.

In light of her apparent reliance upon the factors set forth in 20 C.F.R. § 404.1529(c) and SSR 96-7p (which has since been superseded by SSR 16-3p), Plaintiff is more accurately challenging the ALJ's failure to adopt limitations of being "off task more than 10% of the workday," or having "more than one unscheduled absence per month[,]" or having "three or more panic attacks per week, lasting up to 45 minutes . . . [.]" (DE 12 at 9-10.) These assertions were appropriately rejected by the ALJ based on his finding that Plaintiff was "not entirely credible[.]" (R. at 31.)

The Court should likewise reject Plaintiff's argument. Aside from the fact that credibility assessments have been characterized as "unchallengeable," *Payne*, 402 F. App'x at 113-114, Plaintiff's credibility argument is undeveloped. As to this issue, her only citations to the record are to her own testimony about anxiety attacks (R. at 47-48) and to the VE's testimony regarding the effects of being "off

task," or having "unpredictable breaks," or having "unexcused or unplanned absence," upon an individual's employability (R. at 60-61). (DE 12 at 10.) She does not expound upon the citation to her testimony with reference to any medical records in support thereof.

By contrast, when assigning "little weight" to Plaintiff's allegation that she is unable "to perform any work on a regular and sustained basis . . .[,]" the ALJ provides a lengthy explanation for his conclusion that Plaintiff's allegation is "inconsistent with the above-cited medical records of evidence." (R. at 31-32.) Among multiple other record citations, this paragraph includes a reference to the May 2015 notes, signed by Duncan, wherein medication impact was "favorable" and side effects were "[d]enie[d]/none noted[.]" (R. at 32, 542.) Thus, at least, there was clear consideration of 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). On the other hand, Plaintiff's citations to the hearing testimony do not, standing alone, attack the accuracy or relevance of the ALJ's lengthy credibility paragraph.

Relatedly, Plaintiff seems to draw an inconsistency between the ALJ's recognition of "moderate difficulties" in Plaintiff's CPP (*see* R. at 23, 31, 33, 34) and the ALJ's apparent rejection of her testimony about the effect panic attacks would have upon her ability to work (*see* R. at 47-48, 60-61), in support of which she cites several cases. (DE 12 at 10-11.) *See, e.g., Elias v. Commissioner of*

*Social Security*, No. 2:08-cv-14583-RHC-MAR, 2010 U.S. Dist. Lexis 13054

(E.D. Mich. Feb. 12, 2010) (remanding where "the RFC and hypothetical question

did not properly incorporate Plaintiff's mental limitations[.]"); *Bankston v.*

*Commissioner of Social Sec.*, 127 F.Supp.2d 820, 827 (E.D. Mich. 2000) (Zatkoff,

J.) ("This Court's newly-adopted definition of 'often' [50%] affirms Plaintiff's

claims that his deficiencies of [CPP] precluded him from performing even

sedentary work, thus making him disabled under the Social Security Act.").  True,

this Court has stated:

> It is difficult to reasonably accept "moderate" meaning anything less
> than 20%–30% of the time at work.  Thus, "moderate" concentration
> problems, even if not severe enough under the regulations to meet the
> listing of impairments for a finding of disability at Step 3 of the
> Commissioner's sequential evaluation, need to be included or
> accommodated in some suitable fashion in the hypothetical question
> at Step 5 of that sequence.

*Green v. Comm'r of Soc. Sec.*, No. CIV. 08-CV-11398-DT, 2009 WL 2365557, at

*10 (E.D. Mich. July 28, 2009) (Cleland, J., adopting report and recommendation

of Pepe, M.J.).  Here, the ALJ did so, when he expressly stated:  "The claimant's

bipolar disorder, intermittent explosive disorder, and substance abuse disorder,

which result in moderate difficulties in maintaining concentration, persistence, or

pace, *have been accommodated for by limiting the claimant to simple, routine*

*tasks, in work that has only occasional changes in the work setting*."  (R. at 34.)

No more was required.

### G. Conclusion

I conclude that the ALJ properly assessed: **(a)** the opinion evidence as to Plaintiff's mental health restrictions; **(b)** the evidence post-dating Dr. Kaul's opinion; and, **(c)** Plaintiff's credibility. Accordingly, it is **RECOMMENDED** that the Court **DEEM MOOT** Plaintiff's motion for summary judgment (DE 11), **DENY** Plaintiff's *corrected* motion for summary judgment (DE 12), **GRANT** Defendant's motion for summary judgment (DE 14), and **AFFIRM** the Commissioner of Social Security's decision.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 15, 2017        s/Anthony P. Patti
                               Anthony P. Patti
                               UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on August 15, 2017, electronically and/or by U.S. Mail.

                               s/Michael Williams
                               Case Manager for the
                               Honorable Anthony P. Patti